IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

(Southern Division)

| | |
|---|---|
| ABENA O MENSAH<br>13501 Ale House Circle #143<br>Germantown, MD 20874<br><br>              Plaintiff,<br><br>v.<br><br>WOP PINNACLE, LLC<br>5150 e. Dublin-Granville Rd. Suite 1<br>Westerville, OH 43081<br>          **Serve on**:<br>          The Corporation Trust Incorporated<br>          2405 York Rd., Suite 201<br>          Lutherville Timonium, MD 21093<br><br>and<br><br>NATIONAL CREDIT SYSTEMS MARYLAND INC.<br>A/K/A NATIONAL CREDIT SYSTEMS, INC.<br>3800 Camp Creek Parkway<br>Building 1800 Suite 110<br>Atlanta, GA 30331<br>          **Serve on**:<br>          The Corporation Trust Incorporated<br>          2405 York Rd., Suite 201<br>          Lutherville Timonium, MD 21093<br><br>and<br><br>LAW OFFICE OF BRETT M. BORLAND, P.C<br>2440 Sandy Plains Rd Bldg #1, Ste 200<br>Marietta, GA 30066<br>          **Serve on**:<br>          The Corporation Trust Incorporated<br>          351 West Camden Street<br>          Baltimore, MD 21201-7912<br><br>and | Case No.: _____ |

1

EXPERIAN INFORMATION SOLUTIONS, INC.
505 City Parkway West
Orange County, CA 92668
    **Serve on**:
    The Corporation Trust Incorporated
    2405 York Rd., Suite 201
    Lutherville Timonium, MD 21093

and

EQUIFAX INFORMATION SERVICES, LLC
1550 Peachtree Street, NW
Atlanta, GA 30309
    **Serve on**:
    CSC-Lawyers Incorporating Service Company
    7 St. Paul Street, Suite 820
    Baltimore MD 21202


    Defendants.
_____

## COMPLAINT AND DEMAND FOR A JURY TRIAL

COMES NOW Plaintiff, Abena O Mensah ("Mensah"), by and through undersigned counsel, Ingmar Goldson, Esq. and The Goldson Law, files this Complaint against Defendants, National Credit Systems, Inc. ("NCS"), WOP Pinnacle, LLC ("Pinnacle"), The Law Office of Brett M. Borland ("Borland"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services, LLC ("Equifax"), and in support hereof states as follows:

### INTRODUCTION

Plaintiff Mensah brings this action to seek redress for the defendants' unfair and deceptive business practices, which have left her harmed with a tarnished financial reputation. In short, Defendants NCS and Pinnacle are making false statements about the Plaintiff's finances; stating that she owes money to NCS and Pinnacle that she does not owe. Pinnacle is Mensah's

2

previous landlord, and NCS is Pinnacle's debt collector that furnishes information about the false debt to their co-defendants, Experian and Equifax. On several occasions, Mensah informed the Defendants that she could not possibly owe the debt that the false credit reporting purports that she owes. By keeping that false debt on Mensah's credit report, the Defendants are not only damaging Mensah's reputation and interfering with her access to credit markets, but they are also causing her emotional distress and causing turmoil in her while she attends graduate school.

## PARTIES

1. Plaintiff Abena O Mensah is a natural person and resident of Germantown, Maryland, and is a "consumer" within the meaning of the Maryland Consumer Protection Act.

2. Pinnacle is an Ohio LLC that owns and operates the Pinnacle at Town Center Apartment Complex where the Plaintiff recently lived.

3. NCS is a Georgia collection agency that is a furnisher as defined in the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. §§ 1681 *et. seq.*, and a debt collector as defined in the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p.

4. Borland is a Georgia law firm that is a debt collector as defined in the FDCPA.

5. Experian is an Ohio corporation registered to do business in Maryland. Its principal office is 505 City Parkway West, Orange, CA 92668. Its registered agent in Maryland is The Corporation Trust, Incorporated, 2405 York Road, Suite 201, Lutherville, Timonium, MD 21093-2264.

6. Experian is a consumer reporting agency under 15 U.S.C. §1681a(f).

7. Equifax is a Georgia Limited Liability Company registered to do business in Maryland. Its principal office is 1550 Peachtree St. NW, Atlanta, GA 30309. Its registered Agent

in Maryland is CSC-Lawyers Incorporating Service Company, 7 St. Paul St. Suite 820, Baltimore, MD 21202.

8. Equifax is a consumer reporting agency 15 U.S.C. §1681a(f).

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter because the operative events in this Complaint took place in Montgomery County, the Defendants regularly transact business in Maryland, and the Defendants has availed themselves of the jurisdiction of this Court.

10. Plaintiff brings claims against Defendants pursuant to the FCRA and the FDCPA. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1343 and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

11. Venue is proper in this District under 28 U.S.C. § 1391(b).

## STATEMENTS OF FACT

12. The Plaintiff entered into a lease agreement with Defendant Pinnacle on November 25, 2019. The lease term ended on November 22, 2020, and it called for a 60-day written notice of termination or intent to move-out "as required by paragraph 37 (Move-Out Notice)." Paragraph 37, however, says nothing about move-out notices; it only states move-out procedures (which the Plaintiff followed). Paragraph 36 is titled "Move-Out Notice," and states:

> "Before moving out, either at the end of the lease term, any extension of the lease term, or prior to the end of the lease term, you must give our representative advance written notice of your intention to vacate required by paragraph 3 (Lease Term).
> …
> All notices to vacate must be in writing and must provide the date by which you intend to vacate."

4

13. On August 25, 2020 (almost three months before the end of the lease term), Mensah informed a Pinnacle representative, Ana Mortalla, that she was not going to renew her lease and wished to vacate when her lease term ended. Mortalla responded to Mensah by email, instructing Mensah to fill out a notice to vacate form and email it to Pinnacle.

14. On September 3, 2020 (80 days before the end of the lease term), Mensah emailed a notice to vacate to Melinda Quinones, Pinnacle's representative, which complied with Paragraph 36 and stated that Mensah intended to vacate her apartment on November 22, 2020 (the last date of the 1-year lease term). Mensah gave 80 days notice.

15. Mensah vacated her apartment without incident and left her apartment clean, undamaged, and in great shape.

16. After vacating the Pinnacle apartment, Pinnacle never returned Mensah's security deposit.

17. After vacating the Pinnacle apartment, the Defendants engaged in a dishonest collection campaign in an effort to collect an extra $3,210.52 that Mensah did not owe. A Georgia law firm, defendant Borland, sent correspondence to Mensah demanding payment of the false debt. Borland sent Mensah a "Move Out Statement" which listed a $3,235.29 for "Termination Fees: Non-sufficient notice. NTV received on 11/22/2020."

18. Plaintiff received calls and letters from both NCS and Borland about the false debt. Mensah sent emails to both NCS and Borland making it clear that she could not possibly owe any of the false debt because she sent Pinnacle a timely notice to vacate.

19. Defendants NCS, Experian, and Equifax, began reporting a delinquent collection account on the Plaintiff's credit report. The trade lines state that NCS is the furnisher and Pinnacle is the creditor for the account.

20.     In January of 2021, as soon as she realized that the Defendants were reporting the false debt on her credit reports, Mensah began disputing the false debt electronically. Mensah disputed the debt with the Defendant CRAs in January, March, October, and November of 2021. Pursuant to their duty under the FCRA, the Defendant CRAs forwarded each dispute to NCS.

21.     On March 2, 2022, Plaintiff sent a letter and supporting documents to Defendants Experian and Equifax (together, "Defendant CRAs") disputing the NCS trade line. The dispute letter stated:

> I am disputing the National Credit Systems collections trade line that reports that I owe a debt of $3,210 to Pinnacle at Town Center. This "debt" is supposedly related to my recent tenancy in an apartment compled. See Exhibit 1, which shows a "Move Out Statement" that I got from a law firm representing Pinnacle (my previous landlord). This statement makes it clear that the $3,210.52 debt is from a "termination fee" charged on November 23, 2020. The "Description" on that charge says "NTV received on 11/22/2020. But I actually sent the NTV (Notice to Vacate) on September 3, 2020. See the email that I wrote to them with the subject nine "Notice to Vacate" that I've attached as Exhibit 2. And also see that actual notice that I attached to that email attached to this letter as Exhibit 3. So I gave 72 days notice to vacate, even though I only needed to give 60. I attached (exhibit 4) sections of my lease so you can verify that I only needed to give 60 days notice.
>
> As you can see from these attachments, there is no way that I owe the $3,210.52 debt. Please remove it immediately. If this is not enough for you, please call Pinnacle at Town Center – they will have to verify this information. You can also reach out to me at my phone number above.

22.     In accordance with their duty under the FCRA, each of the Defendant CRAs sent Plaintiff's March 2, 2022 dispute letter to the furnisher, Defendant NCS.

23.     Plaintiff checked her credit reports several times in the weeks after she mailed her dispute letters to Defendant CRAs, and was disappointed to see that neither Equifax nor Experian deleted the NCS trade line – making this lawsuit the Plaintiff's only remaining action available to her to correct her credit report.

24. Defendant NCS and Defendant CRAs failed to conduct reasonable investigations upon each dispute and the Plaintiff's March 2, 2022 dispute letters. As a result of the failure to conduct reasonable investigations, the NCS trade line continues to report a false delinquent debt, and that false reporting continues to place Plaintiff's reputation in a false light because others have access to, and have seen, the false information.

25. After Plaintiff experienced the decline in her credit standing and realized Defendant NCS and Defendant CRAs were going to continue to report the false derogatory information about her even after she disputed the trade line, Plaintiff experienced bouts of emotional distress that included crying, anxiety and loss of sleep. Mensah is a graduate school student and Mensah continues to be worried about how the false reporting will keep her from taking the next important steps in her life – including getting access to credit and finding housing.

26. Plaintiff was denied credit as a result of the false reporting.

27. After a year and a half of fighting, Plaintiff was left with no other recourse than to file the instant lawsuit.

**COUNT ONE  – Violation of the Maryland Consumer Debt Collection Act**
**(Against Pinnacle, NCS, and Borland)**

28. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

29. The Maryland Consumer Debt Collection Act, MD. CODE ANN., COM. LAW § 14-201 *et seq.* (the "MCDCA"), prohibits "collecting or attempting to collect an alleged debt" by "[c]laim, attempt, or threat[] to enforce a right with knowledge that the right does not exist." MD. CODE ANN., COM. LAW § 14-202(8).

30. Defendants Pinnacle, NCS, and Borland claimed certain sums due from Plaintiff that they knew were not due; Plaintiff knows this because she provided evidence to them. If

Defendants Pinnacle, NCS, and Borland did not have actual knowledge of these facts, then they recklessly disregarded them.

31. By attempting to collect debt with phone calls, collection letters, and credit reporting while Plaintiff clearly did not owe the money they were attempting to collect, Defendants Pinnacle, NCS and Borland violated the MCDCA by claiming, attempting, and threatening rights with knowledge that the rights did not exist.

32. Conduct that violates the FDCPA also violates the MCDCA. MD. CODE ANN., COM. LAW § 14-202(11). Pinnacle, NCS and Borland all engaged in conduct that violates the FDCPA provisions in Count 6 of this Complaint.

33. As a direct and proximate result of the defendants' actions, Plaintiff suffered actual damages including emotional distress.

### COUNT TWO – Violation of the Maryland Consumer Protection Act
### (Against Pinnacle, NCS, and Borland)

34. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

35. The debt collecting and reporting activities in which Defendants Pinnacle, NCS, and Borland engaged, as set forth herein, are governed by the Consumer Protection Act, MD. CODE ANN., COM. LAW § 13-101, *et seq.*

36. Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The collection of rent and purported rent deficiencies and fees by Pinnacle directly and indirectly through its authorized agents and employees involves the collection of debts.

37. The Maryland Consumer Protection Act defines unfair or deceptive trade practices to include, inter alia, the following:

8

      (a) False, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers; and

      (b) Failure to state a material fact if the failure deceives or tends to deceive.

Md. Code Ann., Com. Law § 13-301(1) and (3).

    38.    Pinnacle, NCS, and Borland made materially false, misleading oral or written statements, omissions, or other representations related to the status of the Plaintiff's rent payment history which had the capacity, tendency, or effect of deceiving or misleading the Plaintiff in violation of MD. CODE ANN., COM. LAW § 13-301(1).

    39.    A violation of the MCDCA is also a violation of the Maryland Consumer Protection Act. MD. CODE ANN., COM. LAW § 13-301(14)(iii).

    40.    As a direct and proximate result of the actions of Defendants Pinnacle, NCS, and Borland, Plaintiff suffered actual damages including emotional distress.

### COUNT THREE – Violation of the Fair Credit Reporting Act – Failure to Investigate (Defendant NCS Only)

    41.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

    42.    The FCRA requires that a furnisher such as Defendant NCS, after receiving notice from a consumer reporting agency that a consumer disputes information that is being reported by that furnisher, conduct a reasonable investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the consumer reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other consumer reporting agencies to which the furnisher has provided the inaccurate information.

43. From at or before January of 2021 until the present, Defendant NCS has consistently provided inaccurate information about Plaintiff to Defendants Experian and Equifax.

44. Plaintiff disputed the inaccurate information with each Defendant CRA.

45. Pursuant to the FCRA, Defendant CRAs each sent Plaintiff's disputes to the furnisher of the false information: Defendant NCS.

46. Even after Plaintiff's dispute, which included conclusive documentation and explained why she did not owe the debt, Defendant NCS continued to report the inaccurate delinquency on Plaintiff's credit reports.

47. 15 U.S.C. § 1681s-2 prohibits furnishers from reporting inaccurate information, and sets forth the furnisher's duty to investigate the completeness and accuracy of the information reported when the furnisher receives a dispute from a consumer.

48. After receiving notice by Defendants Experian and Equifax, as required by the FCRA, Defendant NCS engaged in conduct that violates 15 USC § 1681s-2(a), (b), by:

 a. Willfully failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

 b. Willfully failing to report the results of investigations to Defendants Experian and Equifax;

 c. Willfully failing to report an accurate status of the inaccurate information to Defendants Experian and Equifax;

 d. Willfully failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

   e. Willfully continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning Plaintiff to Defendants Experian and Equifax; and

   f. Willfully failing to comply with the requirements imposed on furnishers of information pursuant to 15 USC § 1681s-2(a), (b).

  49. In the alternative, the above-described violations were negligent.

  50. NCS's conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages and harm to Plaintiff that are described above.

### COUNT FOUR – Violation of the Fair Credit Reporting Act – Failure to Investigate
### (Defendants Experian and Equifax)

  51. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

  52. The FCRA provides that if the completeness or accuracy of any item of information contained in a consumer's file at a CRA is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, or delete the item from the file within 30 days of receiving the consumer's dispute notice. 15 U.S.C. § 1681i(a)(2)(A).

  53. The FCRA further requires the CRA, within 5 business days of receiving notice of the consumer's dispute, to provide notification of the dispute to the person who furnished the information in dispute and requires the CRA to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A). In conducting its reinvestigation of disputed information in a consumer report, the CRA is required to "review and consider all relevant information submitted by the consumer." *Id.*

  54. Defendants Experian and Equifax failed to conduct a reasonable reinvestigation of the inaccuracies that the Plaintiff disputed.

55. Defendants Experian and Equifax failed to review and consider all relevant information submitted by Plaintiff.

56. As a direct and proximate result of the above-described violations of § 1681i of the FCRA, Plaintiff has sustained damages.

### COUNT FIVE – Violation of the Fair Credit Reporting Act – Failure to Maintain Reasonable Procedures
### (Defendants Experian and Equifax)

57. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

58. Despite receiving disputes with supporting documents from Plaintiff, Defendant CRAs have failed to correct the disputed erroneous information.

59. Defendants Experian and Equifax failed to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information, and file, in violation of 15 USC § 1681e(b). The basis of this allegation is the fact that Plaintiff gave Defendant CRAs definitive proof of the status of the account, including copies of the lease and notice to vacate, yet Defendant CRAs continued to report the false debt.

60. As a direct and proximate result of the above-described violations of § 1681e(b) of the FCRA, Plaintiff has sustained damages.

### COUNT SIX – Violation of the Fair Debt Collection Practices Act
### (Defendants NCS and Borland)

61. The allegations contained in all preceding paragraphs are incorporated herein as if re-alleged.

62. Defendants NCS and Borland are "debt collector[s]" as defined by the Federal Debt Collection Practices Act, 15 U.S.C. § 1692(a)(6).

63. Even after the Plaintiff sent documents making it clear that she did not owe the alleged debt, Defendants NCS and Borland continue to attempt to collect a debt that has no basis in contract or law from Plaintiff.

64. 15 U.S.C. § 1692e(2)(A) prohibits a debt collector from false representation of the character, amount, or legal status of any debt.

65. Defendants NCS and Borland's consistent attempts to collect a false debt violate § 1692e(2)(A).

66. As a proximate result of Defendants NCS and Borland's conduct, Plaintiff suffered concrete harm including emotional distress.

### COUNT SEVEN – Security Deposit - MD. CODE, REAL PROP. § 8–203(e)(4)
### (Defendant Pinnacle Only)

67. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

68. Under MD. CODE ANN., REAL PROP. § 8–203(e)(4), if a landlord, without reasonable basis, fails to return any part of a security deposit, plus accrued interest, within 45 days after the termination of a tenancy, the tenant may sue for up to three times the amount withheld, plus reasonable attorneys' fees.

69. Plaintiff's security deposit was $250, plus accrued interest, at the end of her tenancy at the Pinnacle Apartment, Defendant took that entire amount based on a bogus termination fee and alleged damages despite the fact that the Plaintiff left the apartment undamaged and clean.

70. Accordingly, Defendant withheld Plaintiff's security deposit without a reasonable basis and is liable to Plaintiff under MD. CODE ANN., REAL PROP. § 8–203(e)(4).

## CONCLUSION

WHEREFORE, Plaintiff prays that this Court:

A) Find in favor of Plaintiff in counts 1–7;

B) Award an amount of actual damages for each claim to be determined by a jury;

C) Award punitive damages at an amount to be determined by a jury for willful violations of the FCRA against Defendant CRAs and Defendant NCS;

D) Award the greater of $1,000 or actual damages against Defendants NCS and Borland under the FDCPA;

E) Award three times the unreturned security deposit plus interest for violation of Count 7; and

F) Award attorney's fees and costs pursuant to the fee-shirting statutes in counts 2-7

Respectfully Submitted,

/s/ Ingmar Goldson
Ingmar B. Goldson, Esq.
CPF# 1212110336
The Goldson Law Office
1 Research Court, Suite 450
Rockville, MD 20850
Phone: 240-780-8829
igoldson@goldsonlawoffice.com

Attorney for Plaintiff Abena Mensah

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable

    /s/  Ingmar Goldson
Ingmar B. Goldson, Esq.